**UNITED STATES of America,**
**Appellee,**

v.

**Moses POLANSKY, Defendant-Appellant.**

**No. 137, Docket 33654.**

United States Court of Appeals
Second Circuit.

Argued Sept. 16, 1969.

Decided Oct. 27, 1969.

Irving Rader, New York City (Murray E. Gottesman, New York City, on the brief), for appellant.

John H. Doyle, III, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and John E. Sprizzo, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Before MOORE, HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

In his federal income tax return for 1963 Felix Ehren claimed for deduction as a charitable contribution to the New York City Board of Education the sum of $12,500 for educational films, made by him in Vienna, which depicted dancing, interpretive of certain works of Johann Strauss, accompanied by the Vienna Philharmonic Orchestra. The matter of the contribution and its deductibility was assigned for evaluation to the defendant-appellant, Moses Polansky, who was at that time and had been for approximately two years, a valuation specialist in the Internal Revenue Service.

The jury could have found that Polansky visited Ehren at the latter's office on August 13, 1965 and advised Ehren that an appraisal which Ehren had furnished in support of the claimed deduction was unsatisfactory and that another appraisal would have to be made which would cost 5 to 10% of the value of the films. When Ehren protested that this was ridiculous, Polansky suggested that if Ehren paid to him, Polansky, $1,000 in cash he would see to it that the deduction was approved and that Ehren's contributions of additional films which he had made and deducted in 1964 and 1965 would be satisfactorily treated as proper deductions. Ehren asked for a delay until August 26th and Polansky acceded to his request. Meanwhile, Ehren notified the Federal Bureau of Investigation. On August 26th Polansky appeared at Ehren's office and Ehren gave him an envelope containing ten $100 marked bills. Polansky, after assuring Ehren that the deductions were taken care of, left without opening the envelope. He was then arrested by the F.B.I.

In due course he was indicted on two counts: the first charged solicitation and receipt of $1,000 in return for being influenced in his performance of an official act (18 U.S.C. § 201(c)); and the second charged the acceptance of $1,000, otherwise than as provided by law for the proper discharge of official duties, for an official act performed and to be performed by him (18 U.S.C. § 201 (g)). The jury acquitted Polansky on the first count and found him guilty on the second. Judgment of conviction was entered and Polansky has appealed. We affirm.

The appellant relies principally upon two points: first that there was insufficient evidence to convict him on count two and, therefore, his motion to set aside the verdict on the ground that it was contrary to the evidence and because

it was a compromise verdict, should have been granted; the second point is that his Fourth Amendment rights were violated because electronic eavesdropping equipment had been installed in Ehren's office to record the conversation between Ehren and him when the money was paid over. Polansky also complains of evidentiary rulings which will be discussed briefly.

The appellant's argument on his first point is that he was acquitted on the first or bribery count and that the second, or acceptance of gratuity count, was not proven because there was no evidence that he was merely accepting a gift for having carried out his official duties, and that the evidence presented, if it proved anything, supported only the first count on which he was acquitted. He argues that the counts charged separate and distinct offenses and did not describe a situation where count two was a lesser included offense of count one.

█ The record discloses, however, that there was ample evidence to support the jury's verdict. It may well have decided, as it was required to do, to give Polansky the benefit of a reasonable doubt which was likely to have arisen from the proof that the Internal Revenue Service ordered a new audit on Ehren's 1963 return and a new valuation of the claimed charitable deduction which resulted in no change from the valuation Polansky had made. Moreover, count two charged a lesser included offense of count one. Judge McGohey charged accurately and lucidly on the elements of each of the two offenses and compared them. Several times he pointed out that the distinguishing element of the first count, as compared with the second, was proof beyond a reasonable doubt that the accused had corruptly agreed to receive the money with the specific intent that, in return therefor, it would influence his performance of an official act; whereas such a specific intent was not an essential element of proof of the offense in the second count. Otherwise all of the essential elements of the second count had to be proved as part of the proof of the first count.

The appellant's argument is not new. The same point has been passed upon several times by this court, in cases arising under 18 U.S.C. § 201, though they have concerned sub-sections (b) and (f) rather than sub-sections (c) and (g). The differences and relationships between § 201(b, c, d, and e) and § 201 (f, g, h, and i) are discussed in United States v. Irwin, 354 F.2d 192, 196–197 (2 Cir. 1965), cert. denied 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966), which held § 201(f) to be a lesser included offense of § 201(b). See also United States v. Cohen, 387 F.2d 803 (2 Cir. 1967), cert. denied 390 U.S. 996, 88 S.Ct. 1197, 20 L.Ed.2d 95 (1968); United States v. Umans, 368 F.2d 725, 728–729 (2 Cir. 1966), cert. granted 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, cert. dismissed 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255, rehearing denied 389 U.S. 1025, 88 S.Ct. 583, 19 L.Ed.2d 675 (1967); United States v. Barash, 365 F.2d 395, 402 (2 Cir. 1966). The same principles apply to indictments charging violations of sub-sections (c) and (g).

The acquittal of Polansky on the first count did not preclude a finding of guilt on the second count. The only difference between the two counts was that the first count, § 201(c), called for proof of an element not required for conviction on the second count, § 201(g), and that was proof of the specific intent on the part of the accused corruptly to accept the money in return for being influenced in his performance of an official act. The other essential elements, common to both counts one and two, were clearly proven. There was ample evidence from which the jury could find that the appellant was an official of the Internal Revenue Service, that he knowingly and wilfully asked for and received $1,000 because of official acts performed and to be performed by him in a matter pending before him in his official capacity.

A claim, similar to that now made by Polansky, was made by another appellant, and rejected by this court, in one of the above cited cases, involving an offer rather than the acceptance of money under § 201. On this point the court said:

"Cohen also argues that he was acquitted [under § 201(b)] and, therefore, should have been acquitted of giving a gratuity to a public official [under § 201(f)]. This contention is without merit because the gratuity count, unlike bribery, requires no corrupt intent—it is a lesser form of bribery." United States v. Cohen, *supra* at 806.

The appellant's second point relating to an asserted violation of his Fourth Amendment rights because of an unsuccessful effort by the F.B.I. agents to tape-record the conversation between Ehren and Polansky at the time they met in Ehren's office when the money was paid over to Polansky, is likewise lacking in merit. At the trial, defense counsel asked Ehren on cross-examination whether or not the conversation had been overheard by the F.B.I. agents. Ehren replied that it had. On redirect the prosecutor elicited from Ehren the information that he knew that the recording device had been installed in his office and assumed that a tape-recording was being made when he was conversing with the accused. Ehren had given written permission to the F.B.I. agents to install the microphone in his office. The recording was, however, entirely inaudible. The tape was marked for identification but was not made a full exhibit.

The appellant argues that the Government, by showing that Ehren assumed the conversation was being recorded, was enhancing Ehren's credibility in the eyes of the jury. It was, in effect, saying to the jury that Ehren was afraid not to tell the truth on the witness stand because he knew he could be contradicted by the recording if he did so. This then, he argues, tended to lead the jury to believe that the defendant was necessarily lying because his version of the conversation was different. This argument may have its ingenious aspects but it is entirely unpersuasive. There was nothing to prevent defense counsel from cross-examining Ehren to show that before testifying at the trial Ehren knew the recording was never in fact made or was wholly inaudible. From this the defense could have argued, if it had the temerity to do so, that the respective freedoms of the complaining witness and the defendant to prevaricate had been equally well protected.

The appellant also claims that the purpose of the installation of the recording device was not to preserve the recollection of Ehren, who consented to it, but to have the F.B.I. agents make a record of the private conversation. He refers to no proof on which he bases these conclusions. It seems equally logical to suppose that Ehren had an interest in the corroboration it would afford him, as well as preserving recollection and assisting in bringing to justice the person against whom he had complained. The appellant relies on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), but this case is clearly distinguishable from the one before us. In *Katz* the Government agents conducted electronic surveillance of a telephone booth without the knowledge or consent of any party to the conversation. Appellant also relies heavily on United States v. White, 405 F.2d 838 (7 Cir.), cert. granted, 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969), which has held that even where one party to a conversation consents, so long as the one speaking has not consented to have his speech transmitted to an "uninvited ear," any arrangement which brings this about, falls under the ban of *Katz* and is an invasion of his Fourth Amendment rights, which cannot be waived by any other party to the conversation. This court, however, has already refused to follow the *White* decision; and also it has held that where

one party to the conversation consents to the recording the *Katz* prohibition does not apply. United States v. Kaufer, 406 F.2d 550 (2 Cir.), affirmed 394 U. S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414, on the holding in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), Kaufer rehearing denied 395 U.S. 917, 89 S.Ct. 1741, 23 L.Ed.2d 232 (1969).

■ The appellant asserts that the trial court committed plain error in permitting the prosecutor to ask the accused, on cross-examination, whether or not he could tell the jury the reason why Ehren would choose Polansky, as a person to accuse falsely in court, of knowingly taking $1,000 on April 26, 1965. The accused answered, "No Sir." The defense made no objection to the question. It now claims, however, that the interrogation called for an opinion from Polansky as to the state of Ehren's mind. The cases, which the appellant cites, concerning the interrogation of other witnesses about a defendant's motives are not pertinent to this examination of the defendant. The question and answer cannot be said to affect substantial rights of the appellant. As there was no objection made to them at any time during the trial, the point cannot be raised now, for the first time on appeal. United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965), cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

■ Appellant also complains that during the Government's cross-examination of the accused it questioned him about his liabilities during the years 1963, 1964 and 1965. This line of questioning was objected to, but the court permitted it. It appears that the defendant had liabilities in excess of $100,000. This, of course, tended to show that Polansky had a motive for seeking and accepting gratuities. The questioning was, therefore, proper on cross-examination of the defendant. See, United States v. Caci, 401 F.2d 664, 670 (2 Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1188, 22 L.Ed.2d 450 (1969). The appellant's objection is based upon United States v. Mullings, 364 F.2d 173 (2 Cir. 1966). In that case the Government presented extrinsic proof to show that the accused was addicted to narcotics and, therefore, had a motive to steal property moving in interstate commerce. The decision recognized that a lack of money is admissible to show a possible motive for some crimes, but held that the evidence that the defendant was a narcotics user, to some unspecified degree, was purely speculative. Its probative value was, therefore, far out-weighed by the prejudicial effect the evidence would have. The present case is readily distinguishable from *Mullings*. Here the proof of debt was reasonably explicit and from the defendant's own mouth. It was not in and of itself prejudicial as the evidence of use of narcotics was in *Mullings*; and the offenses charged are among those for which the evidence of indebtedness is admissible to show motive.

There is no error and the judgment of conviction is affirmed.