476 P.2d 878

**STATE of Arizona, Appellee,**

v.

**W. Thomas HOLMES, Appellant.**

**No. 2 CA–CR 210.**

Court of Appeals of Arizona, Division 2.

Nov. 27, 1970.

Rehearing Denied Dec. 31, 1970.

Review Denied Feb. 9, 1971.

---

1.  This case was decided under the law as it existed prior to January 1, 1969.

Gary K. Nelson, Atty. Gen. by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Lewis & Roca by Paul G. Ulrich and John P. Frank, Phoenix, for appellant.

HATHAWAY, Judge.

This is an appeal from a conviction, after trial to a jury, of grand theft of money under false pretenses, A.R.S. §§ 13–661, 663 and 671. The appellant, Holmes, an attorney, obtained $1,000 from a client, Sanford Marburger, a South Tucson liquor store proprietor. Marburger claimed that Holmes had told him that the money was for a fine allegedly imposed for a liquor license violation, but that in actuality, no such fine had been imposed. Holmes stated that the money was in payment of legal fees for services that he had performed for Marburger.

It is first contended that error was committed through the admission into evidence of tape recordings and transcripts of telephone conversations made without the knowledge or consent of the appellant. Recordings of the conversations in question were acquired after Marburger became concerned because he had received no receipt for the $1,000 from the State Liquor Department. He inquired at their office and found that no fine had been levied. Marburger related his story to the liquor department agents, and agreed to assist them in obtaining further information. He first went to Holmes' office, carrying a hidden portable "bug," but Holmes was absent. It was decided that the best way to handle the matter was for Marburger to engage Holmes in a telephone conversation concerning the alleged fine. Marburger phoned Holmes from the office of the State Liquor Department in Tucson and the conversation was recorded. This taped conversation was admitted into evidence at the trial.

■ It is appellant's position that the taping of this conversation without his consent violated the protection against right of privacy guaranteed him by the Fourth and Fourteenth amendments of the U. S. Constitution. He asks us to follow United States v. White, 405 F.2d 838 (7th Cir. 1969) now awaiting argument before the U. S. Supreme Court. In *White* the court held that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) required the consent of all parties to a conversation before it could be overheard or

recorded. This court rejects appellant's argument and believes that the consent of one of the parties to the conversation is sufficient to allow the taping of the conversation. United States v. Kaufer, 406 F.2d 550 (2nd Cir. 1969), affirmed 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969); Koran v. United States, 408 F.2d 1321 (5th Cir. 1969); United States v. Gardner, 416 F.2d 879 (6th Cir. 1969); United States v. Polansky, 418 F.2d 444 (2nd Cir. 1969); Dancy v. United States, 390 F.2d 370 (5th Cir. 1968); People v. Gibson, 23 N.Y.2d 618, 298 N.Y.S.2d 496, 246 N.E.2d 349 (1969); People v. Chatfield, 272 Cal.App.2d 141, 77 Cal.Rptr. 118 (1969); United States v. Missler, 414 F.2d 1293 (4th Cir. 1969).

■ *Katz* is distinguishable in that it involved eavesdropping on a conversation without the consent of *either* party. In Lopez v. United States, 373 U.S. 427, 83 S. Ct. 1381, 10 L.Ed.2d 462 (1963) the U. S. Supreme Court allowed a recording of conversations between a government agent and the defendant to be admitted in a bribery prosecution. Appellant attempts to distinguish *Lopez* because in that case the defendant invited the informer to come in whereas here Marburger initiated the conversation. This distinction we believe unimportant. Appellant knew what he was saying to Marburger, intended his communication for Marburger, and therefore took the chance that his confidence was mistakenly placed in Marburger who might reveal what he had been told. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed. 2d 374 (1966).

Even *White*, supra, which we are urged by appellant to follow, does not denounce the use of a tape recording, obtained with the consent of one of the parties, for purposes of corroboration. The court, in distinguishing *Lopez*, supra, stated:

"Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), has factual features which distinguish it from the instant case. In Lopez a concealed device on the person of an undercover agent recorded a conversation between him and the defendant. Admission in evidence of the recording itself to corroborate the undercover agent's testimony was upheld in the circumstances of the case. The important distinction between Lopez and this case is that here the informer, Harvey Jackson, was not produced as a witness whereas in Lopez the Government agent was a witness. Lopez goes no further than to hold that where an informer testifies as to conversations with a defendant, a recording of such conversations is admissible for the limited purpose of corroboration." White, supra, 405 F.2d 847.

In the present case Marburger, who consented to the taping, was a witness, and the tape was introduced solely for corroboration purposes.

■ Appellant appears to protest that he should be immune from having his conversations related by people he converses with. A danger one faces in societal relationships is knowingly taking "the risk that this conversant might expose his statements." Koran v. United States, supra. So long as the conversation with the informer or agent, whether or not he was the initiator, was voluntary, we will allow testimony concerning it. Recordings of such conversations are also admissible, it being immaterial whether the conversation is memorized by the informer or recorded.

Next, appellant claims he was denied a fair trial by an impartial jury as a result of the disclosure of prejudicial collateral matters concerning him in the jury room in violation of the Sixth and Fourteenth amendments and Article 2, Section 24 of the Arizona Constitution, A.R.S. Appellant collected affidavits from jurors stating that their decision was partially based on the statements of another juror to the effect that appellant had been involved in tax evasion. Appellant feels that if the information was known to this juror before the trial, he should have disclosed it on voir dire examination. If the information was received from a newspaper article publish-

ed during the trial, appellant feels that this was a prohibited source of information.

We will not concern ourselves with the argument that the juror failed to disclose his knowledge on voir dire since appellant's opening brief states:

"The affidavits of jurors Kennedy, Cappana, Holland, and Guthrie and the investigator Garland show that Bradley spoke to the jurors of Holmes' 'tax evasion,' a label so untrue and inaccurate that it could only have come from the news story (see statement of the court, J. 174)."

We take this as a concession that the information was received from the newspaper article.

■ It is our opinion that any objection to this information was waived by appellant's attorney. In chambers the court said it would question the jury as to whether they had seen the article and tell them that it was untrue. Appellant's attorney responded:

"That is fine with me. I think the danger is taken away. They can read it."

The judge informed the jury that the article was false. Since this was the only concern of appellant's attorney and he agreed that the jury could then read it, appellant cannot now be heard to complain if the juror did read the newspaper article. The judge did what appellant's attorney wanted; informed the jury that the article was false.

Appellant further argues that the tape-recorded conversation was insufficient to meet the requirement of corroboration prescribed by A.R.S. § 13–664 to maintain a conviction under A.R.S. §§ 13–661, 663 and 671, and that the court should have granted his motion for a directed verdict. A.R.S. § 13–664 requires that the false pretense be "proved by the testimony of two witnesses, or that of one witness and corroborating circumstances." At the close of the state's case, defense counsel moved for dismissal on the basis that the only evidence tending to prove Holmes' guilt was Marburger's uncorroborated testimony. The court denied

the motion stating, "* * * that the tape recording telephone conversation alone is sufficient corroborating circumstances to satisfy the requirement of the statute. * * *"

■ Appellant contends that the transcript of the recording is incoherent and the recording could not possibly corroborate Marburger's testimony. We agree that portions of the transcript are incomprehensible, but this is due largely to poor court reporting. After hearing the tape, we have concluded that the tape and the evidence considered as a whole furnishes sufficient corroboration of false pretenses to satisfy the statute. In State v. Holmes, 106 Ariz. 202, 472 P.2d 71 (1970), our Supreme Court said:

"Our legislature has provided that in proving guilt of theft by false pretenses it must be by two witnesses, or testimony of complainant must be corroborated. This corroboration may be by corroborating circumstances; however, those circumstances must be such that they would equal the testimony of a second corroborating witness in regard to the falsity of the alleged false representation."

It appears uncontroverted that Marburger delivered $1,000 cash to the appellant. The state's exhibit 1 in evidence is a receipt from appellant to Marburger for that amount, stating that the money was paid for "legal services and fees." The following portions of the telephone conversation taken from the recording tape, appear particularly pertinent:

"* * *

MARBURGER: Well, I hate like heck to bother you on this except I, I don't know I guess I got a problem on it and I * * *

HOLMES: Well, what is the problem Sandy?

MARBURGER: Well, now,

HOLMES: I gave you a receipt and you know, if you recall at the time, I deliberately gave you a receipt.

MARBURGER: No, I got the receipt.

HOLMES: As, as attorney's fees and everything so that you could write it off. In other words, you can take it as an expense item.

MARBURGER: Yeah, but, you see, uh well then I * * *

HOLMES: Otherwise you can't.

MARBURGER: Yeah, well I didn't understand that, see. Now I told, when it came up, when I put it on the book, I put down, you know, that was a fine paid to the Liquor Department."

The above conversation clearly illustrates the appellant's knowledge that the receipt was made out in a certain way—as attorney's fees—for the purported purpose of qualifying it as an expense item; observing that if it were not so categorized, it would not qualify as an expense item. The conversation continued:

"MARBURGER: My accountant picked it up.

HOLMES: Well, you just tell him to unpick it! And put it down and just write it off as attorney's fees! He hasn't filed your income tax yet.

MARBURGER: No, that's the whole thing, but he's filed for the month see, that was March.

HOLMES: Well, he hasn't—you've— what do you mean filed for that month?

MARBURGER: Look, every month he makes out a profit and loss sheet.

HOLMES: Oh, well that's all right, but he can change that. That's the reason I deliberately did it that way was so you could take it as a write off.

MARBURGER: So what shall I tell him? Just that * * *

HOLMES: Tell him to contact me if he wants to and I'll tell him what to do. It's real simple like. You have the receipt. You have everything. All you do is turn in the receipt to him. Nancy told me you lost the receipt.

MARBURGER: Well, I couldn't find the first one but Nancy gave me another one so that part's no problem.

HOLMES: Just hand it to him and say, put it on the books this way and this is the way we do it.

MARBURGER: Yeah, and then if he says to me what about the fine and all?

HOLMES: Tell him I took care of that personally, which I did, and that's my business.

MARBURGER: Tell him you, or me? I mean tell him Sandy Marburger took care of it or what?

HOLMES: Tell him Tommy Holmes took care of it, but I gave you a bill in that manner and that's the way he files your tax.

MARBURGER: Okay, okay, and then if he's got any problems * * *

HOLMES: I have my reasons for doing that also, Sandy.

MARBURGER: If he has got any problems, I'll let him call you.

HOLMES: Have him give me a call.

MARBURGER: Okay.

* * * * * *

MARBURGER: Okay, well then, I'm sorry I had to bother you on this, Mr. Holmes, but you know me. I don't know anything about and I want to make sure I was doing the right thing.

HOLMES: Well, you're doing the right thing and that's the reason I did it that way was so that you would have a write off and, and wouldn't have to pay taxes on it.

MARBURGER: Okay, fine. Okay, that's all.

HOLMES: Okay, fine. * * *"

The foregoing discloses an understanding that the $1,000 was given to Holmes to satisfy a fine by the Liquor Department, but was receipted for by him as "Legal Services and fees" purportedly to enable Marburger to take an expense item deduction, which he could not have taken if the receipt had honestly disclosed the purpose for which the money was given—a fine. The appellant argues that the fine referred to by

Marburger in the discussion could have had reference to fines levied for liquor license violation prosecutions in the City Court. This contention is without merit, since Marburger clearly identified the fine that he spoke of as "a fine paid to the Liquor Department."

Marburger also testified that he wrote a personal check for $350 on his personal checking account, took $50 cash out of the liquor store account, pawned two rifles for $100 and drew $500, every cent he had, from his savings account to raise the $1,000. Each of the sources for these funds was verified by independent documentary evidence, with the exception of the $50 cash from the liquor store. The trial court observed when ruling on the admissibility of this testimony:

> "I. think that the ponetic [frantic] efforts of an individual to accumulate the money by a given time would certainly, it could be argued, would be indicative of the fact that it was a fine that had to be paid by a deadline rather than a legal fee. Clients owe lawyers fees for years and don't get too disturbed about paying them. You don't usually see a client going out to make these different calls early in the morning so that they can pay a legal fee. I think the testimony would have a bearing on that issue too."

Considering the evidence as a whole, we conclude that it amply corroborates Marburger's testimony.

The final argument on appeal is that this evidence concerning Marburger's source of funds in raising the $1,000 was prejudicial error because of its inflammatory nature. In appellant's words it made him look like he was "acting mercilessly to squeeze every last possible cent from him" (Marburger) and that he was being called a "shyster." The trial court has discretion in weighing the prejudice of evidence against its probative value. State v. Beers, 8 Ariz.App. 534, 448 P.2d 104 (1968). The evidence does not appear unduly prejudicial and we do not think that the trial judge abused his discretion.

Affirmed.

CAMERON, C. J., and JACOBSON, J., concur.