597 P.2d 998

**STATE of Arizona, Appellee,**

**v.**

**David Earl STANLEY, Appellant.**

**No. 1 CA-CR 2723/3764-PR.**

Court of Appeals of Arizona,
Division 1,
Department C.

April 17, 1979.

Rehearing Denied June 21, 1979.

Review Denied July 19, 1979.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Carol Benyi, Asst. Attys. Gen., Phoenix, for appellee.

Waldo W. Israel, Yuma, for appellant; Garth Nelson, on rehearing.

David Earl Stanley, in pro per.

OPINION

EUBANK, Presiding Judge.

On March 3, 1977, an information was filed against appellant, David Earl Stanley, and a co-defendant, Duane Lee Smith, charging both with Count I, conspiracy to commit armed robbery in violation of

A.R.S. § 13–331(A); Count II, possession of narcotic drugs (cocaine) for sale in violation of A.R.S. § 36–1002.01; Count III, transportation of narcotic drugs (cocaine) in violation of A.R.S. § 36–1002.02; Count IV, importation of narcotic drugs (cocaine) in violation of A.R.S. § 36–1002.02; and charging appellant with Count V, possession of stolen property in violation of A.R.S. § 13–621. On April 1, 1977, the trial court granted appellant's motion to sever the trials of the co-defendants, and to sever Count V from the trial of the other four counts contained in the information. Appellant's case proceeded to a jury trial, and on April 15, 1977, the jury returned a verdict of guilty on all four counts. Following an aggravation/mitigation hearing, appellant was adjudged guilty of and sentenced on two of the counts, conspiracy in the first degree to commit armed robbery and transportation of a narcotic drug. On each of the two counts, the trial court sentenced appellant to not less than seven years nor more than twenty-one years in prison, with the sentences to run concurrently. Appellant filed a timely notice of appeal from the judgment and sentences, which is 1 CA–CR 2723. Thereafter appellant also filed a petition for review of the trial court's dismissal of his petition for post-conviction relief, which is 1 CA–CR 3864–PR. Because common questions of law and fact are involved, we consolidated the appeal and petition for review, designating 1 CA–CR 2723 as the primary number.

We will view the facts necessary to our disposition of this appeal and petition for review in the light most favorable to sustaining the jury's verdict of guilty. *State v. Moore,* 111 Ariz. 496, 533 P.2d 663 (1975).

Sometime in January of 1977, appellant, a resident of Vista, California, and Rodney "Skip" Halleck, a resident of Yuma, Arizona, conspired to rob a group of people who were selling a large quantity of coral stolen in California. While in California to arrange this robbery, Halleck decided that he did not want to go through with the scheme. Upon learning that Halleck was going to back out of the planned robbery, Appellant became extremely hostile toward Halleck, and threatened him with physical harm. Appellant then returned to Yuma.

On February 8, 1977, Halleck received a telephone call from appellant, who told Halleck that unless he sent him $500.00 or alternatively "set up" one of his friends for a sale of counterfeit narcotics, he would shoot Halleck and his wife and children. Immediately following this conversation, Halleck contacted the Yuma Police Department and explained the foregoing sequence of events to Sergeant Dean Burrow. Sergeant Burrow advised Halleck that, if he was contacted again by appellant, he should cooperate with him.

Later that same day, February 8, Halleck telephoned appellant, and told him that he did not have $500.00 and he did not want to "set up" any of his friends, but that he did not want any "trouble" either. Appellant told Halleck that he only wanted him to locate anyone with "money" and an interest in purchasing cocaine, to whom appellant could sell bogus cocaine. Halleck stated that he would try to find someone interested in buying cocaine. Following this conversation, Halleck reported to Sergeant Burrow.

The following day, February 9, Halleck telephoned appellant and informed him that he had found some people who wanted to purchase cocaine, but that appellant would have to have a sample available for the purchasers to inspect. When appellant asked Halleck to obtain the cocaine sample, Halleck responded that "It was his deal and he would have to get it."

On February 10, 1977, Halleck, in the presence of Sergeant Burrow and several narcotics agents, placed a telephone call to appellant from the offices of the Yuma City-County Narcotics Task Force. This telephone conversation was tape recorded by the officers with Halleck's knowledge. During this conversation, Halleck told appellant that he had located two potential buyers for his bogus cocaine sale, and that he would have to have a sample available at the time of the sale.

On February 13, 1977, appellant called Halleck at his residence, but Halleck informed him that he was busy at the moment and would have to call him back. Halleck immediately contacted Agent Steven Hardy of the Narcotics Task Force, and thereafter met him at the Narcotics Task Force office. From that office, Halleck placed a return call to appellant. This telephone conversation also was tape recorded with Halleck's knowledge. During the conversation, appellant related to Halleck that he should inform the potential buyers that he had eight ounces of cocaine for sale and that the price would be $1,500.00 per ounce. Appellant also stated that he would not hesitate to kill the purchasers if there were any complications in making the sale of bogus cocaine.

The next day, February 14, while at home, Halleck had another telephone conversation with appellant. During this conversation, appellant stated that he had obtained the cocaine sample, and that he was about to leave Vista for Yuma.

Meanwhile in California, on February 11, 1977, appellant contacted a recent acquaintance, Duane Lee Smith, and asked him if he could obtain a small quantity of cocaine, explaining that he needed a sample for his planned sale of counterfeit cocaine. At that time, appellant asked Smith if he wanted to accompany him to Yuma, but Smith replied that he was not certain he wanted to.

On February 13, 1977, appellant called Smith at his house in Vista, and told him that he needed the cocaine sample quickly. On February 15, appellant again met with Smith and gave him $50.00 to purchase the cocaine sample. Smith thereafter purchased a small quantity of cocaine, and gave it to appellant. At that point, Smith decided to accompany appellant on his trip to Yuma.

In the afternoon of February 15, appellant and Smith left Vista by car, and headed toward Yuma. On the way, appellant stopped at a friend's house, and borrowed a shotgun. On the morning of February 16, appellant and Smith arrived in Yuma, and soon thereafter contacted Halleck, who directed them to his house.

While testing the shotgun at Halleck's house, Smith injured his hand, and was taken to the emergency ward of a local hospital. Shortly thereafter, Halleck called the Narcotics Task Force and informed them that appellant had arrived and was armed with a shotgun.

When Halleck and appellant returned to his house, appellant asked Halleck to call the potential narcotics buyer so that he could arrange to meet with him and make the sale. Halleck then called Agent Richard Stallworth, who, according to a prearranged plan, was to pose as the potential buyer. Appellant thereafter arranged to meet the undercover agent at a designated place later that day to make the sale of counterfeit cocaine. Following this telephone conversation, appellant and Halleck, equipped with eight bags of bogus cocaine, filled with flour, the genuine cocaine sample and the shotgun, picked up Smith at the hospital. From the hospital, they drove to the designated place of sale. There, appellant met the undercover agent and had Halleck give him the sample of genuine cocaine for inspection. After Agent Stallworth determined the sample was genuine, appellant and Smith were arrested. Following the arrests, the police searched appellant's vehicle, and seized a number of items, including the shotgun and eight bags of counterfeit cocaine.

At their arraignment hearing on March 7, 1977, both appellant and Smith pled not guilty to the aforementioned charges. After the trial court granted appellant's motion to sever the trials of the co-defendants, Smith entered a plea of guilty to a reduced charge of conspiracy in the second degree in return for a dismissal of the other charges against him. As mentioned before, appellant proceeded to trial and was eventually found guilty of Counts I through IV in the information, and sentenced on two of those counts.

On May 11, 1977, appellant filed a timely notice of appeal, and also requested that the trial court appoint substitute counsel on

appeal. The trial court granted appellant's motion, and appointed substitute counsel for appeal. In an order filed November 28, 1977, this Court granted appellant's motion for leave to file a supplemental brief *pro se,* so that he could raise points he felt were omitted in the opening brief of counsel on appeal.

On November 3, 1978, as stated above, appellant filed a petition for review of the denial of his Rule 32 petition, which we have consolidated with this appeal. Since the grounds for relief raised in the Rule 32 petition proceedings are essentially no more than a reiteration of several arguments presented in the opening and supplemental briefs on appeal, we will dispose of the several points raised in the Rule 32 petition in conjunction with our disposition of those same issues presented in the briefs on appeal.

PROSECUTOR'S COMMENTS REGARDING FORMER CO-DEFENDANT'S GUILTY PLEA

In both the opening and supplemental personal briefs, appellant argues that he was denied a fair and impartial trial because of certain comments made by the prosecutor during his opening statement. Appellant's specific objection is to the prosecutor's remarks that former co-defendant Smith had pled guilty to conspiracy in the second degree, that Smith was awaiting sentencing, and that he would testify for the State at appellant's trial. Even though it may not have been proper for the prosecutor to comment about a co-conspirator's guilty plea, because we conclude that the comments neither influenced nor prejudiced the jury's consideration of the case, the remarks do not require granting a mistrial.

The granting of a mistrial is within the sound discretion of the trial court. *State v. Trotter,* 110 Ariz. 61, 514 P.2d 1249 (1973). "We will not interfere with the exercise of the trial court's discretion unless the offending remarks are palpably improper and clearly injurious." *State v. Reim,* 26 Ariz.App. 528, 533, 549 P.2d 1046, 1051 (1976).

In *State v. McDonald,* 117 Ariz. 159, 571 P.2d 656 (1977), the appellant argued that the trial court committed reversible error by permitting an accomplice to testify that he had pled guilty to the same crime with which appellant was charged. The Arizona Supreme Court recognized the general rule that evidence that one defendant has pled guilty is not admissible against another defendant. However, the Court went on to state that:

> [W]hen no cautionary instruction is requested or given, the facts and circumstances will be examined in order to decide whether the jury's verdict was possibly influenced, thereby prejudicing the appellant.

117 Ariz. at 161, 571 P.2d at 658. The Court concluded that the error in admitting evidence of the guilty plea was harmless beyond a reasonable doubt since appellant had been caught in the act of committing the offense and his guilt was therefore evident.

In the instant case, while defense counsel objected to the prosecutor's comments, there was no cautionary instruction requested or given to the effect that Smith's guilty plea was not to be considered as evidence of appellant's guilt. Consequently, as required by *McDonald,* we must examine the facts and circumstances of this case in order to determine whether the jury's verdict was possibly influenced by the comments. As in *McDonald,* appellant's guilt was evident since he was caught in the act of committing the crimes charged. We therefore conclude that the prosecutor's remarks were harmless beyond a reasonable doubt.

CONSTITUTIONALITY OF THE "SEIZURE" OF APPELLANT'S TELEPHONE CONVERSATIONS

In his supplemental personal brief and petition for post-conviction relief, appellant challenges the constitutionality of the tape recording of his telephone conversations with Halleck. Appellant argues that the tape recordings of his telephone conversations were inadmissible evidence because the "seizure" of these conversations oc-

curred without a warrant and was, therefore, violative of his Fourth Amendment rights. Appellant also contends that the tape recording of these conversations violated § 605 of the Communications Act, 47 U.S.C. § 605 (1976). We cannot agree.

Under the Fourth Amendment, there is no invasion of privacy in monitoring, recording and introducing into evidence a telephone conversation where one party has given prior consent to the interception. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *State v. Holmes,* 13 Ariz.App. 357, 476 P.2d 878 (1970), *cert. denied,* 402 U.S. 971, 91 S.Ct. 1669, 29 L.Ed.2d 135 (1971). Additionally, there is no violation of § 605 of the Communications Act, 47 U.S.C. § 605 (1976) or of § 2510 *et seq.* of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* (1976), if one of the parties to the communication has given prior consent to such interception. 18 U.S.C. §§ 2511(2)(c) and 2517(3); *United States v. Bishton,* 150 U.S.App.D.C. 51, 463 F.2d 887 (1972).

The record before us clearly shows that both of the tape recorded telephone conversations between appellant and Halleck were monitored and recorded with Halleck's knowledge and prior consent. We conclude that the tape recordings of those conversations were properly admissible as evidence at trial.

Appellant further argues that the tape recording of his telephone conversations was a violation of his Fifth Amendment rights, and, therefore the recordings were inadmissible because he was not given any *Miranda*[1] warnings prior to his conversations with Halleck. This contention also is without merit. *Miranda* warnings are not required when a defendant is not in custody nor deprived of his freedom. *State v. Keller,* 114 Ariz. 572, 562 P.2d 1070 (1977). The record shows that at the time of his telephone conversations with Halleck, appellant was neither in custody nor deprived of his freedom.

## CONSTITUTIONALITY OF THE WARRANTLESS SEARCH OF APPELLANT'S AUTOMOBILE FOLLOWING HIS ARREST

In his supplemental brief *pro se,* appellant apparently claims that the warrantless search of his automobile following his arrest was unreasonable as a search incident to arrest, and, therefore, the admission of evidence seized constituted reversible error. We need not decide whether the search of appellant's automobile was justified as a search incident to arrest, however, because the warrantless search of the entire vehicle was justified under the automobile exception to the Fourth Amendment warrant requirement. *See Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In *State v. Puig,* 112 Ariz. 519, 520–21, 544 P.2d 201, 202–03 (1975), the Arizona Supreme Court stated:

> It is well-established law that a vehicle "may be searched without a warrant upon facts not justifying a warrantless search of a residence or office." *Dyke v. Taylor Implement Manufacturing Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). The right to search, however, is dependent on "the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The exception to the requirement of a search warrant is based on the fact that "[T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable." *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

In this case, the information obtained from Halleck and from the taped

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

conversations between Halleck and appellant concerning appellant's plan to bring a sample of genuine cocaine for inspection by the potential buyer, together with the fact that appellant caused Halleck to hand to the undercover agent genuine cocaine, certainly gave the police probable cause to believe that appellant's car contained additional narcotic contraband. We conclude that the warrantless search of appellant's automobile following his arrest was reasonable under the facts of this case.

ENTRAPMENT DEFENSE

In his opening and supplemental briefs, appellant argues that there was sufficient evidence presented at trial to support a finding that appellant was entrapped into committing the crimes for which he was convicted. Apparently, appellant's contention is that the trial court erred in not ruling, as a matter of law, that appellant was entrapped. The record reveals, however, not only that there was no basis for a ruling that appellant was entrapped as a matter of law, but also that there was sufficient evidence to support the jury's conclusion that appellant was not in fact entrapped.

Entrapment as a matter of law is established only when the evidence is undisputed that the defendant had no predisposition to commit offenses of the kind complained of but was induced to do so by the trickery, persuasion, or fraud of government agents. *State v. McKinney,* 108 Ariz. 436, 501 P.2d 378 (1972); *United States v. Martinez,* 429 F.2d 971, 976 (9th Cir. 1970). However, if the State rebuts the entrapment defense, and the proof and counterproof on the issue depend upon credibility factors or inferences to be drawn from conflicting evidence, the question of entrapment is one of fact for the jury. *State v. Cox,* 110 Ariz. 603, 522 P.2d 29 (1974); *United States v. Martinez, supra.* There is no entrapment where the criminal conduct was not the product of the creative activity of law enforcement personnel or agents, or where the government merely provided an opportunity for a predisposed person to commit the crime. *State v. McKinney, supra. See generally State v. Masengill,* 110 Ariz. 310, 518 P.2d 560 (1974).

The record before us shows that the State did rebut appellant's testimony that he was entrapped into committing the crimes charged. Halleck's testimony indicates that the conspiracy to sell counterfeit cocaine and the related purchase of sample genuine cocaine were the product of the creative activity of appellant alone. The testimony of appellant's co-conspirator, Duane Smith, corroborates Halleck's testimony that the genuine cocaine samples were obtained pursuant to appellant's instructions. Halleck's testimony also reveals that appellant was the driving force behind the counterfeit drug transaction, even to the point of threatening Halleck with physical harm if he failed to cooperate. Furthermore, the State presented evidence that the police did nothing more than provide an opportunity for appellant to carry out those crimes which he was already predisposed to commit. Agents Hardy and Stallworth testified that police involvement in these crimes was limited to advising Halleck to cooperate with appellant in his scheme, monitoring two telephone calls made by Halleck to appellant and supplying an undercover narcotics agent as the potential purchaser of the counterfeit cocaine. In view of the summarized testimony above, which rebuts appellant's claim of entrapment, it is clear that appellant was not entitled to a ruling that, as a matter of law, he was entrapped, and that the trial court properly presented the entrapment issue to the jury.

Where there are substantial contradictions and discrepancies in the evidence, an appellate court will not disturb the jury's verdict if there is substantial evidence to support it. *State v. Burrell,* 106 Ariz. 100, 471 P.2d 712 (1970). We think the record establishes that there was sufficient evidence for the jury to conclude that appellant was not entrapped into committing the crimes charged.

## SUFFICIENCY OF EVIDENCE FOR THE CONSPIRACY CONVICTION

In his supplemental personal brief, appellant argues that there was insufficient evidence presented by the State to support the jury's verdict of guilty on the charge of conspiracy in the first degree to commit armed robbery pursuant to A.R.S. § 13–331(A).[2] Appellant argues that there was no evidence of an unlawful agreement between appellant and his alleged co-conspirator, Smith. Appellant asserts that Smith was merely a supplier of sample cocaine for the scheme, and did not agree to participate in the crime of armed robbery.

"Robbery is the taking of personal property from the possession of another through the use of force or fear." *State v. Estrada*, 27 Ariz.App. 183, 184, 552 P.2d 772, 773 (1976). As long as the weapon is within the immediate control of the accused and is available for use, he is armed for purposes of A.R.S. § 13–641, the robbery statute. *State v. Barnett*, 111 Ariz. 391, 531 P.2d 148 (1975). A conspiracy to commit armed robbery does not exist unless there is an agreement between two or more persons to commit armed robbery, and an overt action is taken in furtherance of the agreement. A.R.S. § 13–332; *State v. Estrada, supra*, 27 Ariz.App. at 184, 552 P.2d at 773. No written, formal or definite agreement is necessary, and the existence of the unlawful agreement may be inferred from the overt conduct of the parties. *State v. Estrada*, 27 Ariz.App. 38, 40, 550 P.2d 1080, 1082 (1976). The overt act which is required for a conspiracy to exist can be any act which naturally advances the intent of the conspiracy. *State v. Dupuy*, 116 Ariz. 151, 154, 568 P.2d 1049, 1052 (1977).

The record before us reveals that Smith, as well as appellant, engaged in numerous overt actions in furtherance of a conspiracy to commit armed robbery of the potential buyer of counterfeit cocaine. Smith obtained the sample of genuine cocaine for appellant, knowing full well that appellant wanted to arm himself with a gun "for defensive purposes in case this deal he had went bad on him." After deciding to go with appellant to Yuma, Smith accompanied appellant in his attempt to locate a handgun, and was with him when he obtained the shotgun. At the request of appellant, Smith test-fired the shotgun after it had been sawed-off by appellant and Halleck. Finally, Smith accompanied appellant to the designated place of sale, knowing that appellant was in fact armed with a shotgun.

An appellate court does not decide whether it would have reached the same decision as the jury did, but whether there was competent evidence to support the conclusion of the jury. *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977). We think that the evidence of the overt actions taken by Smith and appellant is sufficient to support an inference of an unlawful agreement to commit armed robbery and to justify the jury's conclusion that appellant and Smith conspired to commit armed robbery.

## ERROR IN THE JURY INSTRUCTIONS

In his supplemental brief, appellant contends that the trial court erred in refusing his attorney's request that Agent Stallworth be designated as the object of the conspiracy in the jury instruction on the conspiracy charge. Appellant contends that because there was testimony at trial regarding other robberies, including appellant's plan for Smith and himself to rob a jewelry store in San Diego, California, the jury might have improperly believed that they could find appellant guilty on the conspiracy charge on the basis of this testimony. We find no merit to this contention.

It is established that it is not incumbent upon the trial court to give defendant's requested instructions when the substance of such instructions has been sub-

2. A.R.S. § 13 331(A) (repealed 1978, now A.R.S. § 13-1003(A)) provides in pertinent part:

A. A person is guilty of conspiracy in the first degree if, with intent to commit, or to have another person commit, any action constituting . . . robbery . . . he conspires with one or more persons to engage in or cause the commission of such.

stantially covered by the instructions given by the trial court. *State v. Tuell*, 112 Ariz. 340, 541 P.2d 1142 (1975); *State v. Kelley*, 110 Ariz. 196, 516 P.2d 569 (1973).

In this case, the trial judge instructed the jury that they must find that appellant was involved in the conspiracy *alleged in the information.* The information specifically alleged that appellant conspired to engage in the armed robbery of Richard Stallworth, and that at least one overt act in furtherance of this conspiracy took place in Yuma County, Arizona. Since the record reflects that the clerk read the contents of the information to the jury prior to trial, we think that the jury instructions given by the trial judge adequately instructed the jury that they were to consider only the conspiracy to commit armed robbery of Agent Stallworth. We conclude that the trial court did not err in refusing appellant's request.

Appellant further contends in his supplemental brief that the trial court erred in failing to specifically instruct the jury that they were not to consider co-conspirator Smith's plea of guilty in determining the guilt of appellant. The record does not reflect that this particular instruction was requested.

The failure to give an instruction which has not been requested is not error unless the matter is vital to the rights of the defendant. *State v. Hardy*, 112 Ariz. 205, 540 P.2d 677 (1975). In the event the trial judge fails to instruct the jury on a matter vital to the rights of the defendant, the omission constitutes fundamental error. *State v. Evans*, 109 Ariz. 491, 512 P.2d 1225 (1973). Fundamental error is " 'such error as goes to the foundation of the case, or which takes from the defendant a right essential to his defense.' " *State v. Gamble*, 111 Ariz. 25, 26, 523 P.2d 53, 54 (1974).

Because the evidence presented by the State clearly supported the conspiracy charge, we conclude that the trial court did not commit fundamental error in failing to instruct the jury not to consider Smith's guilty plea.

## DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

In the opening brief and supplemental brief, appellant argues that he was denied effective assistance of counsel at trial in violation of his Sixth Amendment rights.

The United States Supreme Court has stated that an attorney's performance must be "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773 (1970). The Arizona Supreme Court has said that "a conviction will be held invalid on the basis of ineffective assistance of counsel only if the representation was a farce, a sham, or a mockery of justice." *State v. Watson*, 114 Ariz. 1, 13, 559 P.2d 121, 133 (1976), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977). On the basis of the record before us, we cannot say that appellant was denied effective assistance of counsel at trial.

To begin with, the record reveals that most of appellant's complaints against his trial counsel simply are not true or are not supported by the record. Contrary to appellant's claim, trial counsel did make a motion for reduction of bail and release of defendant, which motion was denied. Similarly, there is nothing in the record showing that trial counsel wrongly advised appellant on the subject of whether the trial court would appoint an investigator or that trial counsel failed to use investigative tools at his disposal. The record does not support appellant's complaint that cross-examination by trial counsel was frivolous. Further, the record does not reveal that trial counsel misled appellant by refusing to file a motion to disqualify the trial judge. Appellant's claims that trial counsel failed to object to evidence is also without merit. The evidence was admissible.

When a defendant makes claims against the adequacy of his attorney's services which are not supported by the record, these claims cannot be considered on appeal. *State v. Williams*, 13 Ariz.App. 201, 475 P.2d 293 (1970).

Appellant further cites, as support for his claim of ineffective assistance of trial counsel, the fact that this was trial counsel's first trial. The mere fact that this was trial counsel's first trial is no basis for a claim of ineffective assistance of counsel. The right to the effective assistance of counsel does not include the right to the *most* effective counsel available. *See State v. Wilder*, 22 Ariz.App. 541, 529 P.2d 253 (1974), *cert. denied*, 423 U.S. 843, 96 S.Ct. 78, 46 L.Ed.2d 64 (1975).

It is well established that a defendant is not denied effective assistance by counsel who did the best he could with facts which offered no meritorious defense. "Mere failure to achieve an acquittal is no part of a court's consideration of the work of a trial lawyer" with respect to an allegation of ineffective assistance of counsel. *State v. McCline*, 109 Ariz. 569, 570, 514 P.2d 490, 491 (1973).

In this case there was overwhelming evidence of appellant's guilt. The only realistic opportunity for acquittal lay in the defense of entrapment, which trial counsel presented to the jury. Counsel in this case clearly satisfied his obligation to appellant. We conclude that appellant was not denied effective assistance of counsel at trial.

In his motion for rehearing of his petition for post-conviction relief, appellant also asserts that he has been denied effective assistance of counsel on appeal. The gist of appellant's complaint is that his attorney on appeal failed to raise certain issues which appellant felt should have been raised in the opening brief.

"When counsel's competence is challenged because of matter of counsel's opinions or judgment, invalidation of a conviction is not warranted." *Trevino v. State*, 18 Ariz.App. 515, 517, 503 P.2d 991, 993 (1972). Since the determination of what issues are appealable in view of the trial record is a matter of counsel's judgment, we conclude that appellant's contention is without merit.

## DENIAL OF A FAIR AND IMPARTIAL TRIAL

In his supplemental brief, appellant claims that Judge Douglas Keddie, who presided at this trial, was prejudiced against him because Judge Keddie had previously accepted a guilty plea from appellant's former co-defendant, Duane Smith. However, the record shows that Judge William Nabours, not Judge Keddie, presided at Smith's change of plea hearing and accepted his guilty plea. We therefore conclude that appellant's claim is without merit.

Additionally, we note that there is nothing in the record to support appellant's contentions that he was denied the right to a fair trial because of pretrial publicity; that the State failed to disclose the fact that appellant's co-defendant had agreed to plead guilty and testify at trial for the State; that appellant's presentence report contained false and prejudicial statements; or that the trial court gave improper emphasis to crimes of which appellant was not convicted. It was not error for the trial court to consider information concerning crimes appellant was never convicted of for purposes of sentencing. *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972); *State v. Dixon*, 21 Ariz. App. 517, 521 P.2d 148 (1974). In the case at hand, there is no showing of improper use of this information by the trial court.

## EXCESSIVE SENTENCE

Appellant contends that his two concurrent sentences of 7 to 21 years are excessive. Appellant cites A.R.S. § 13–1717(B) (repealed 1978, now A.R.S. § 13–4037(B)), which gives the appellant court power to reduce and modify sentences on appeal. Appellant asks this Court to exercise this power and reduce his sentence.

The statutory range of sentences for the appellant's crimes is five years to life for transportation of a narcotic drug, A.R.S. § 36–1002.02, and not more than 30 years for conspiracy in the first degree, A.R.S. § 13–331(A) (repealed 1978, now A.R.S. § 13–1003(A)). The concurrent sentences of

7 to 21 years for each of these crimes were therefore well within the limits set by the statutes.

Arizona courts have consistently held that sentencing is within the sound discretion of the trial court, and a sentence will be upheld if it is within the statutory limits, unless there is a clear abuse of discretion. *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976), *cert. denied*, 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977); *State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976); *State v. Bell*, 113 Ariz. 279, 551 P.2d 548 (1976). An abuse of discretion has been described as capriciousness or the failure to conduct an investigation sufficient for the proper exercise of the sentencing decision. *State v. Douglas*, 87 Ariz. 182, 349 P.2d 622 (1960); *State v. Mixon*, 27 Ariz.App. 306, 554 P.2d 902 (1976). The power to reduce a sentence under A.R.S. § 13–1717(B) is to be used with great caution and exercised only when it clearly appears that the sentence is too severe. *State v. Malory*, 113 Ariz. 480, 557 P.2d 165 (1976); *State v. Fierro*, 101 Ariz. 118, 416 P.2d 551 (1966); *State v. Valenzuela*, 98 Ariz. 189, 403 P.2d 286 (1965).

When a trial judge has discretion as to the limits of the sentence, "he should consider not only the circumstances of the offense charged but also the moral character and past conduct of the defendant himself in order that he may grade the punishment in accordance with the general character of both the offense and of the party convicted." *State v. Castano*, 89 Ariz. 231, 233, 360 P.2d 479, 480 (1961). Based on all of the circumstances surrounding this case and appellant's background and character, we conclude that appellant's legally imposed sentences were not excessive. Thus, we find no grounds warranting a reduction in appellant's sentences by this Court.

In light of the foregoing, the judgment and sentences of the trial court are affirmed.

WREN, J., and HENRY S. STEVENS, J., Retired, concur.

## SUPPLEMENTAL OPINION

EUBANK, Presiding Judge.

The motions for rehearing raise one additional question not directly dealt with in the opinion: whether the trial court erred in denying appellant's request for an evidentiary hearing.

On April 11, 1978 appellant filed his Petition for Post-Conviction Relief, pursuant to Rule 32, Rules of Criminal Procedure, 17 A.R.S., supplemented by a second Petition for Post-Conviction Relief filed on January 2, 1979. The second Petition contended that the trial judge was prejudiced against the appellant and that this prejudice was communicated to the jury and may have influenced them. The evidence of this prejudice was a comment allegedly made by the judge to appellant's associate trial counsel that he should "quit making so many motions." Appellant argues that, since the comment was made before the jury but does not appear on the record, he was entitled to have an evidentiary hearing.

Our review of the record does not reveal the comment. Appellant makes no allegation as to exactly when, during the course of the trial, the event occurred. The basis for the allegation is contained in the first affidavit of the associate trial counsel, which was prepared and filed by him in the response to appellant's complaint against him to the State Bar. In paragraph 7 of this first affidavit counsel said, in part.

> During the trial, I constantly advised my associate as to strategy and motions to make during the trial. As a matter of act, the Honorable Douglas Keddie made a comment to me during the trial when I was present in the courtroom watching it at one time in a joking manner to quit making so many motions.

This affidavit was dated August 22, 1978.

On January 31, 1979, appellant, through new counsel, filed his Motion for Evidentiary Hearing which was supported by the second affidavit of associate trial counsel. This affidavit states, in part:

2. That during the trial of David Earl Stanley, Judge Keddie remarked to him that "he should not make so many motions."

3. That the foregoing remark was made at a time when Mr. Kongable was making in chambers motions to the judge on Mr. Stanley's behalf;

4. That the foregoing remark was made in chambers and was not made in the presence of the jury.

On the basis of this affidavit and the record, Judge Keddie executed his order of January 31, 1979, denying the hearing and dismissing the petition pursuant to Rule 32.6(c), Rules of Criminal Procedure, 17 A.R.S.

We review such summary dispositions by questioning whether appellant's contention constitutes a "colorable claim," that is, whether the contention has the appearance of validity. *State v. Suarez,* 23 Ariz.App. 45, 530 P.2d 402 (1975). It has the appearance of validity, if the allegations, taken as true, would have changed the verdict. *State v. Richmond,* 114 Ariz. 186, 194, 560 P.2d 41, 49 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101, application denied, 434 U.S. 1323, 98 S.Ct. 8, 54 L.Ed.2d 34, rehearing denied, 434 U.S. 976, 98 S.Ct. 537, 54 L.Ed.2d 469 (1977).

Under the facts alleged in the petition, we do not believe that appellant has made out a colorable claim. First, even assuming that the judge's statement was made before the jury, it would not have been error, since, in our opinion, the remark obviously went to the court's duty to insure and manage a fair and speedy public trial. Article 2, Section 24, Arizona Constitution, 1 A.R.S. A part of that process is to keep counsel within bounds of propriety. Second, the associate's affidavit attached to appellant's motion for an evidentiary hearing does not support his contention that the comment was made before the jury. Third, at best, appellant demonstrates a conflict between the first affidavit and the second affidavit of counsel, neither of which goes to the real issue of whether, as appellant contends, the trial judge was actually prejudiced against appellant. Fourth, there is no evidence that the trial judge was prejudiced against the appellant. Therefore, appellant failed to establish a "colorable claim" and the trial judge did not abuse his discretion in dismissing the second Rule 32 petition.[1]

The dismissal of appellant's petition for post-conviction relief is affirmed. All motions for rehearing are denied.

WREN, J., and HENRY S. STEVENS, J., Retired, concur.

1. Appellant also contends, in his first Rule 32 petition, that he should have been given an evidentiary hearing on the issue of effective assistance of counsel. This point was covered in some detail in our original opinion. We thought we had effectively, if tacitly, indicated that appellant had not stated a "colorable claim" requiring the hearing, and no error resulted from the trial court's dismissal of the petition. In any event, if there is any question, we specifically hold that the appellant did not state a colorable claim for relief; consequently, no evidentiary hearing was required.