502 P.2d 1087

The STATE of Arizona, Appellee,

v.

Melvin Freddie WILDER, Appellant.

No. 2 CA–CR 304.

Court of Appeals of Arizona, Division 2.

Nov. 16, 1972.

Rehearing Denied Dec. 20, 1972.

Review Denied Jan. 23, 1973.

Lawrence Ollason, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, G. H. Ladendorff, Warren R. Brown, Phoenix, for respondent employer.

**411**

———◆———

Gary K. Nelson, Atty. Gen., Phoenix by John S. O'Dowd and Howard L. Fell, Asst. Attys. Gen., Tucson, for appellee.

G. L. Patterson, II, Phoenix, for appellant.

KRUCKER, Chief Judge.

The defendant was found guilty by a jury of first degree burglary under A.R.S. § 13–302, as amended. A motion for new trial was duly made and denied. From this conviction and denial of the motion, defendant appeals.

Prior to trial and at the time of the motion for a new trial defendant moved to suppress evidence consisting of tape recordings of his conversation with an alleged accomplice. The sole question for our determination is whether the trial court erred in refusing to suppress this evidence.

The facts viewed in a light most favorable to the appellee are as follows. In November, 1970, Jack Cuzick was arrested on a felony charge out of Willcox, Arizona. While in custody in the Willcox City Jail, he entered into an arrangement with the defendant, who was then Chief of Police in Willcox, to set up burglaries in that city. Cuzick was to commit the burglary with a confederate. The confederate would then be captured, while Cuzick escaped. According to Cuzick, the defendant indicated this would serve to clear up some burglaries in Willcox. Among those burglaries discussed was that of the (Willcox) Ray's Market, the one which was the subject of defendant's prosecution.

After Cuzick was released, and pursuant to their agreement, Cuzick went to Tucson in an effort to find an accomplice. For his own protection, and prior to committing any burglaries, Cuzick tape recorded several conversations between himself and the defendant. After the burglary of the Willcox market, he was arrested by the Department of Public Safety in Clifton, Arizona. Feeling he had been wronged, he turned these tape recordings he had made of his conversations over the phone with the defendant to the Department of Public Safety.

Thereafter, the Department of Public Safety asked him to make several other calls to the defendant. These later recordings were taped in the same manner by affixing a microphone to the phone receiver by a suction cup device. At the trial, Cuzick was a witness and these tapes were introduced for corroboration purposes.

It is defendant's contention that the taping of this conversation without his consent violated his protected right of privacy guaranteed him by the Fourth and Fourteenth Amendments of the United States Constitution. In support of this position, defendant has cited Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), arguing that he has been deprived of his reasonable expectation of privacy.

In the case of State v. Holmes, 13 Ariz. App. 357, 476 P.2d 878 (1970), cert. denied, 403 U.S. 936, 91 S.Ct. 2255, 29 L.Ed.2d 717, a case on all fours with the one at bar, a like contention was advanced and rejected by this court. In distinguishing Katz, we said:

"This court rejects appellant's argument and believes that the consent of one of the parties to the conversation is sufficient to allow the taping of the conversation. [Citations omitted.]

Katz is distinguishable in that it involved eavesdropping on a conversation without the consent of either party. [Citations omitted.]" 476 P.2d at 880.

Subsequent to Holmes, the United States Supreme Court, in United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), emphasized the continued viability of prior cases approving various means by which governmental agents or informers, using electronic equipment, record or transmit their conversations with wrongdoers

who believe the conversation will remain private.[1] Although *White* does not involve a face-to-face confrontation, we do not think, as defendant contends, that this distinguishes it from the case at bar. This is so because a face-to-face confrontation will not serve to assure that someone is not overhearing an accused's conversation. However strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is colloborating with a government agent regularly recording his conversations.

Judgment affirmed.

HATHAWAY and HOWARD, JJ., concur.

---

1. In *White* four justices held that electronic eavesdropping was permissible under the Fourth Amendment on the ground that no constitutional right was involved because a defendant has no justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police. 401 U.S. 749, 91 S.Ct. 1125, 28 L.Ed.2d 457. And, since a party to the conversation may disclose it, it may be intercepted by electronic eavesdropping. A fifth member of the court concurred in the judgment for reasons set forth in his dissent in *Katz*, stating that eavesdropping carried on by electronic means does not constitute a "search" or "seizure". A sixth concurred in the result agreeing that the *Katz* decision was improperly given retroactive effect but stated that the Fourth Amendment imposes a warrant requirement when an informant secretly records or transmits his conversations with an accused. Three members of the Supreme Court dissented on various grounds.