322 S.E.2d 42

**Kelly FARRUGGIA, Petitioner,**

v.

**Jerry C. HEDRICK, Warden, etc., Respondent.**

**No. 16391.**

Supreme Court of Appeals of West Virginia.

Oct. 17, 1984.

Franklin D. Cleckley, Morgantown, for petitioner.

George P. Stanton, Asst. Atty. Gen., Charleston, for respondent.

NEELY, Justice.

In the wee hours of 22 March 1982 an unoccupied dwelling house in Rhodell, West Virginia, was consumed by flames. A subsequent investigation revealed that the fire was caused by arson and the petitioner was indicted under *W. Va. Code* 61–3–1 [1935] for first-degree arson on 11 May 1984. He retained counsel and was released on bail. To all accusations, he steadfastly declared his innocence.

The State maintains that the petitioner provided his co-conspirator and former employee, Mr. Willie Gibson, with a can of kerosene and a promise of $500 to burn the house in question to the ground. Petitioner's motive for organizing this crime was, the State contended, anger at the modest dwelling's owner and at her daughter-in-law, once his passionate inamorata. The State's evidence shows that on the eve of the fire the petitioner made threats to the home's owner to "blow the house off the face of the earth" and, after his indictment, twice made payments of $1,000 to her either to induce silence after her grand jury testimony but before her testimony in court, or simply to make amends. Although the monies were deposited as evidence with the court, our petitioner denies any payment. Petitioner was tried and convicted of first degree arson in the Circuit Court of Raleigh County. We did not grant an appeal.

Petitioner's grounds for habeas corpus relief focus on a 2 July 1982 conversation in an automobile between Mr. Gibson, the confessed pyromaniac, and the petitioner. Petitioner had asked Mr. Gibson to accompany him from Rhodell to Beckley in order to speak with petitioner's lawyer. Entirely without the petitioner's knowledge, Mr. Gibson was wired by the Raleigh County Sheriff's Department with two transmitters that enabled the entire conversation to be monitored and recorded—not only conversations in the vehicle but also in the office of the petitioner's lawyer. There is also evidence that a second conversation with Mr. Gibson that same day was recorded in a municipal parking lot. Although the petitioner denies any involvement in the arson, he made several inculpatory statements that seem to indicate otherwise. At the petitioner's trial, the existence of those incriminating statements was made known to the jury through the testimony of Mr. Gibson and the petitioner.

Although the incriminatory tapes were not actually played to the jury, the prosecution pursued numerous lines of questioning based on direct quotes from the recordings. Furthermore, the tainted conversations were mentioned during the cross-examination of petitioner when the State made reference to the meeting with Mr. Gibson. Notwithstanding that the judge instructed the jury to disregard this testimony, we cannot apply the harmless-error rule because this evidence was deliberately collected in defiance of *Massiah v. United States, infra,* and the defendant had a constitutional right to its total exclusion. This Court is unable to declare a belief that the inclusion of this evidence "was harmless beyond a reasonable doubt" under the test of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

I

This case is almost a perfect replica of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Indeed, the facts of the two cases are so strikingly similar as hardly to be distinguishable. It appears thus, at first blush, *in consimili casu, consimile debet esse remedium.*

In *Massiah, supra,* the petitioner and a co-conspirator were indicted for narcotics offenses. The petitioner retained a lawyer and was released on bail along with his co-conspirator. Subsequently, the co-conspirator agreed to allow federal agents to install a radio transmitter in his automo-

bile. That device enabled the agents to listen to, and record, Massiah's self-incriminating comments a few days later. At the trial one of the agents testified to Massiah's remarks over the persistent objections of counsel. Like the petitioner in the case before us, Massiah was convicted.

The Supreme Court in *Massiah, supra,* held that the use of incriminating statements made by an indicted person in the absence of his lawyer violates the Sixth Amendment right to assistance of counsel. The Court stated:

> ... the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. 377 U.S. 201 at 206, 84 S.Ct. 1199 at 1203.

■ This Court stresses that *Massiah, supra,* has not in recent years been modified, reinterpreted, or even ignored. It stands today, as it did in 1964—an ironclad, rigidly enforced rule. The Sixth Amendment thus prohibits the introduction at trial of incriminating statements deliberately extracted from an accused by any agent of the government in the absence of counsel.

That the Supreme Court insists upon a strict reading of *Massiah, supra* is illustrated by the more recent case of *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). In *Henry, supra,* a governmental informer was confined in the same cellblock with the accused. The informer was instructed to listen, but not to initiate, conversations with the accused regarding robbery charges against him. In this manner, the authorities hoped to evade the language of *Massiah, supra,* prohibiting the government from "deliberately eliciting" incriminating statements from the accused. The attempt at circumvention failed. The Supreme Court read "deliberately eliciting" as applying to situations where the government actively embarked upon a mission to extract information from a suspect by stealth—a process that could be regarded as "the functional equivalent of an interrogation." *United States v. Henry,* 447 U.S. 277, 100 S.Ct. 2190. A passive listening device, however, which collected, but did not induce, incriminating comments, did not violate *Massiah, supra. United States v. Henry,* 447 U.S. 276, 100 S.Ct. 2189.

■ In our case, Mr. Gibson was no passive listening device. In exchange for his cooperation, the charges against him were dropped and he assisted a zealous sheriff's department in its post-indictment investigation of the petitioner. Without a doubt, the joint activity of Mr. Gibson and the sheriff's department induced the petitioner's unwitting, self-incriminating statements. Thus, his remarks were "deliberately elicited" and hence a violation of our petitioner's Sixth Amendment rights. Accordingly, the writ of habeas corpus for which the petitioner prays is awarded with leave to the State to retry petitioner promptly.

Writ Awarded.