342 S.E.2d 268

**STATE of West Virginia**

v.

**Phyllis THOMPSON.**

**No. 16679.**

Supreme Court of Appeals of West Virginia.

April 4, 1986.

302

P. Kimberly McCluskey, Beneke & Bremer, Wheeling, for appellant.

Mary Rich Maloy, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

The Circuit Court of Ohio County sentenced the defendant, Phyllis Thompson, to from one-to-five years in the state penitentiary for delivery of marijuana. On appeal she complains that the trial court committed various errors, both during the trial of the case and during the sentencing process. While we can find no reversible error during the trial, we do believe that the procedures followed during sentencing were improper. Accordingly, we reverse the judgment of the Circuit Court of Ohio County and direct that the defendant be resentenced.

For some time prior to the defendant's arrest the Wheeling City Police received reports that she was selling marijuana. On February 8, 1984, they searched an undercover informant, Scott Myers, gave him marked money, fitted him with a radio transmitter, and sent him to the defendant's house. At the defendant's house, Mr. Myers purchased six marijuana cigarettes from the defendant for $15.00. The police monitored and recorded the conversation between Mr. Myers and the defendant, and they subsequently searched the house pursuant to a search warrant. The search revealed a number of items. The defendant was arrested and later indicted for delivery of marijuana.

## I.

When the grand jury convened to consider the indictment against the defendant, Police Officer Steve Habursky appeared and testified about the events leading to the defendant's arrest. Among other things he stated that the State's informant, Scott Myers, was a "juvenile" when he was actually 18. Later, in response to a question from a juror, an assistant prosecuting attorney, Mr. Kahle, indicated that Mr. Myers was "sixteen or seventeen" years old. Mr. Kahle also defined entrapment in response to a juror's question.

On appeal the defendant contends that the remarks about the informant's age and entrapment were improper and vitiated the indictment. She argues that the State intentionally exploited the informant's young age in order to enlist the jurors' sympathy for an indictment. She claims that under *State ex rel. Miller v. Smith*, 168 W.Va. 745, 285 S.E.2d 500 (1981), her conviction should be reversed.

In *State ex rel. Miller v. Smith, supra*, this Court recognized that when a prosecutor attempts to influence a grand jury in reaching a decision, by presenting unsworn evidence, or otherwise, the indictment returned is potentially tainted.

■ The record of the case presently before the Court fails to demonstrate that the prosecutor was actually attempting to influence the grand jury or that the defendant's conviction should be reversed because of the rule in the *Miller* case. The prosecutor's remarks relating to the informant's age were not made at the instigation of the prosecutor, but made in response to a juror's question. Likewise, the remarks about entrapment, which was actually a matter of defense, and not relevant to the question of whether the indictment was true, were made after the State had completed presentation of its case and made in response to a juror's question.

■ The indictment which the jury eventually returned charged the defendant with "unlawfully, knowingly, intentionally, and feloniously delivering unto Scott Myers, for remuneration, a certain quantity of marijuana." In addition to challenging the grand jury procedure, the defendant argues that because the indictment contained the words "for remuneration" it included a pecuniary element in the charge and thus improperly stated the law in the State of West Virginia relating to the unlawful delivery of marijuana and rendered the indictment defective.

■ The words "for remuneration" were pure surplusage in the indictment. This Court has recognized that the inclusion of surplusage in an indictment is not a fatal defect which renders conviction upon the indictment reversible. In syllabus point 1 of *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955), it is stated that: "Immaterial, unnecessary and harmless averments, which might be omitted without affecting the charge in an indictment against the accused and which need not be proved, may be properly considered and rejected as surplusage." *See, State v. Hudson*, 157 W.Va. 939, 206 S.E.2d 415 (1974).

## II.

During the actual trial of the defendant's case the trial court permitted Detective Charles Horbatak to testify. Prior to trial defense counsel filed a routine discovery motion pursuant to Rule 16 of the *West Virginia Rules of Criminal Procedure*, requesting full disclosure of the names and addresses of the witnesses to be called by the State. The answer filed by the State on May 14, 1984, did not include the name of Detective Horbatak. On appeal, the defendant contends that the trial court erred in allowing Detective Horbatak to testify.

The State called Detective Horbatak to establish the chain of custody of the six marijuana cigarettes and the other real evidence seized in the course of the investigation of the case.

■ In *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980), this Court discussed the question of when the presentation of evidence not disclosed on discovery would warrant reversal of a criminal conviction. In syllabus point 2 the Court concluded:

> When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

The record of the case presently before the Court indicates that the sole purpose of Detective Horbatak's testimony was to establish the chain of custody of items purchased from the defendant and seized from her house. Defense counsel was advised of Detective Horbatak's role in the investigation of the case early in the proceedings in the case. Defense counsel was also aware of the fact that the State had seized real evidence and that it would seek the admission of the items seized into evidence. Moreover, it appears that defense counsel was provided with a copy of the evidence submission slip prepared by Detective Horbatak and that Detective Horbatak was listed on a praecipe which was filed four weeks before trial. That praecipe indicated that he would be a witness.

■ The facts of the case indicate that defense counsel was aware or reasonably should have been aware of the fact that Detective Horbatak participated in the investigation of the case and that the State would attempt to introduce the evidence obtained by him. Under the circumstances, the failure of the prosecution to make formal disclosure should not reasonably have hampered defense counsel's preparation and presentation of the defense's position. Under the *Grimm* rule the court's subsequent admission of Detective Horbatak's testimony was not prejudicial error.

### III.

The defendant next contends that the trial court erred in allowing the jury to hear the tape recording made in the course of the alleged controlled buy. She argues that the recording was in great part inaudible and nonintelligible and that an adequate foundation had not been laid for it, in that all the voices recorded on it were not identified. Also, she contends that the recording was conducted by electronic surveillance while Scott Myers was in the defendant's home uninvited without a warrant, and that the recording constituted an illegal search and seizure.

■ In *State v. Harris*, 169 W.Va. 150, 286 S.E.2d 251 (1982), this Court discussed the admissibility of tape recordings which were, in part, inaudible. The Court concluded, in syllabus point 4: "A tape recording is not rendered inadmissible if it has inaudible areas so long as the recording as a whole is coherent and trustworthy." Although portions of the tape involved in the case presently under consideration are inaudible and unintelligible, the portions of the tape surrounding the actual purchase of marijuana from the defendant are audible and intelligible. The tape supports the informant's testimony that he requested that the defendant sell him drugs, that the price was set, and that the defendant sold him marijuana. The Court believes that the tape is sufficiently coherent and trustworthy to have been admissible under the rule set forth in *State v. Harris.*

The Court also believes that the defendant's contention that the surveillance was made without a warrant and uninvited constituted an illegal search and seizure is without merit. In *State v. Blackburn*, 170 W.Va. 96, at 105, 290 S.E.2d 22, at 32 (1982), the Court discussed covertly recorded tapes and held:

> [W]e conclude that warrantless electronic recording of a defendant's conversation with the consent of a participant to the conversation who, unknown to the defendant, is acting in concert with the police does not violate the prohibition against unreasonable searches and seizures contained in article 3, section 6 of our state constitution.

The *Blackburn* situation involved a defendant who had not been indicted for a crime at the time the recording was made. In the later case of *Farruggia v. Hedrick*, 174 W.Va. 58, 322 S.E.2d 42 (1984), the Court recognized that where a defendant had been indicted and the recording was made in the absence of counsel, it was inadmissible. The single syllabus point of *Farruggia* stated:

> The Sixth Amendment to the *Constitution of the United States* prohibits the use at trial of incriminating statements made by a defendant to an accomplice after indictment and without the assistance of counsel when the accomplice was cooperating with the police and was equipped secretly to transmit and record the conversation.

This is consistent with the holdings of the Supreme Court of the United States in *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) and *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

■ Taking the *Blackburn* and *Farruggia* holdings together, it is clear that a warrantless electronic recording of a defendant's conversation made before his Sixth Amendment right to counsel has attached, and made with the consent of a participant to the conversation who, unknown to the defendant, is acting in concert with the police, does not violate the prohibition against unreasonable searches and seizures

guaranteed by the Fourth Amendment to the United States Constitution and by article III, section 6 of the West Virginia Constitution.

Clearly the tape involved in the case presently before the Court was made with the knowledge and consent of Scott Myers. At the time the defendant had neither been arrested nor indicted. Her situation thus falls within the principle in *Blackburn* rather than that in *Farruggia.* We believe that the tape was admissible into evidence.

### IV.

The defendant asserts that at least twice during the trial the State introduced testimony indicating or implying that she had been selling or dispensing marijuana to various people for up to a year or more. She states that with this testimony the State created the impression that she was a steady supplier of drugs to people in the area. She argues that the evidence essentially was evidence of collateral crimes and that the court erred in depriving her a pretrial *in camera* evidentiary hearing regarding the admissibility of this evidence.

The specific evidence relating to the prior purchases included the testimony of Lieutenant Joseph Davis, a witness for the State, who indicated that the police had received anonymous complaints concerning drug trafficking at the defendant's residence for some months prior to her arrest. Also, Scott Myers testified that his brother, Bradley, had been buying marijuana regularly from the defendant for a year. He stated that "She'd give some away and she sold it, but she'd give some of it away."

At the beginning of Lieutenant Davis' testimony the court interrupted to warn jurors to consider the testimony concerning the anonymous complaints only as an explanation for Scott Myers action and for no other purpose. Later, when Myers himself was testifying, the court instructed the jurors: "I would like to tell the jury at this point that all of this evidence that is being given now is not as a reflection as to the guilt or innocence of Phyllis Thompson in regard to this particular charge, but only to show the motive of this young man in

working with the police in attempting to make a buy from Miss Thompson."

The defendant contends that in spite of the cautionary instructions the Assistant Prosecuting Attorney referred to the testimony regarding collateral criminal conduct in his closing argument. He stated: "The real part of the case of Lieutenant Davis saying they had been hearing these calls; they had been getting these anonymous calls."

As a general rule this Court has recognized that subject to certain exceptions, proof which shows or tends to show that the defendant is guilty of the commission of crimes other than the one charged is inadmissible into evidence. *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). However, this Court has also recognized that the improper introduction of such evidence, under certain circumstances, can constitute harmless error. *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1980). The test of when such error is harmless is set forth in syllabus point 2 of *Atkins:*

> Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

The Court believes that the direct evidence in the case now being considered, excluding the evidence relating to the prior crimes, is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt. The Court also believes that the trial court's cautionary instructions neutralized any prejudicial effect that the evidence of the prior crimes might have

created and that the trial court's error in admitting it was harmless under the *Atkins* rule.

## V.

██ In the course of the search of the defendant's house the police seized a large number of items, including caffeine tablets and drugs which had been lawfully prescribed by a Wheeling doctor. The defendant contends that many of these items were inadmissible as evidence against the accused. Some were never identified as illegal substances, some could not be conclusively traced to the defendant's exclusive possession or ownership, and most were wholly irrelevant to the State's case. All the items were in a box which was placed on the prosecutor's table next to the jury.

Before the defendant's trial began, defense counsel moved to suppress most of the items in the box, including all drugs, drug paraphernalia, and other inventoried evidence with the exception of the six marijuana cigarettes taken from the informant. Following an *in camera* hearing on the motion, the court orally ordered stricken from evidence everything except the marijuana cigarettes, the money used to pay for the cigarettes, and a white glass dish with marijuana residue in it found in the defendant's first floor dining room.

Despite the court's suppression order, many items, including the glass dish, a set of scales, and some aqua-blue capsules, remained in the courtroom in the box within view of the jury. They were not, however, offered into evidence. Not until completion of three-fifths of the case were the dish, scales and blue capsules ordered removed from the table in front of the jury at defense counsel's request. Even then, they were moved only a short distance and they remained visible to the jury during the duration of the trial.

The defendant argues that her case was damaged by the State's failure to inform the jurors that many of the pills and capsules in the box were not illegal. Additionally, she argues that the items proximity to the marijuana cigarettes and other drug paraphernalia in the evidence box tainted them with a presumption of illegality.

In *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983), the Court reiterated the long-standing rule that a trial court's discretionary rulings on evidentiary matters should not be disturbed by an appellate court unless it appears that the trial court's action amounted to an abuse of discretion. In the *Kopa* case the trial court allowed a certain knife to be displayed in the courtroom during trial, but later excluded the knife from evidence. The defendant contended that the trial court erred when it denied his pre-trial motion to exclude the knife from trial. Under the rule that the trial court's ruling should not be disturbed unless the trial court's action amounted to an abuse of discretion, we concluded that the display of the knife to the jury did not constitute reversible error.

The facts in the present case are somewhat analogous to those presented in *Kopa*, and, as in the *Kopa* situation, the Court believes the trial court did not commit reversible error by permitting the display of the items. We further note that the trial court did move the items when requested to do so by defense counsel.

## VI.

The defendant next claims that the trial court erred in refusing to give her instruction on reasonable doubt.

At the close of the evidence in the case the defendant offered the pattern instruction on reasonable doubt suggested by this Court in *State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457 (1980). In lieu of that instruction, the trial court gave another instruction which the defendant, in effect, concedes was proper. She argues, however, that: "On the whole, the jury heard an instruction less charitable to the appellant than the appellant's proffered instruction."

██ The rule in this State regarding this situation provides: " 'It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court.' Syl. pt. 20, *State v. Hamric*, 151

W.Va. 1, 151 S.E.2d 252 (1966)." Syllabus point 3, *State v. Evans*, 172 W.Va. 810, 310 S.E.2d 877 (1983). While the instruction offered by the defendant may have been more "charitable," the Court does not believe that the trial judge's refusal to give it constituted reversible error in light of the charge actually given.

## VII.

Additionally the defendant claims that the trial court erred in refusing to instruct the jury on the lesser included offense of possession of marijuana and in refusing to allow the jury to return a possession verdict.

In the course of the trial the defendant did not take issue with the State's contention that she had sold marijuana to Scott Myers. Rather she relied upon the defense of entrapment.

In syllabus point 2 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), the Court held that: "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." In the marijuana context, the Court has held that where a defendant is charged with delivery of marijuana and does not attempt to controvert the charge of delivery, but instead relies upon a defense, he is not entitled to an instruction on the lesser offense of possession of the substance. *State v. Ruddle*, 170 W.Va. 669, 295 S.E.2d 909 (1982).

This holding indicates the defendant in the instant case was not entitled to a lesser included offense instruction or verdict.

## VIII.

Other errors assigned by the defendant relate to the trial court's actions during sentencing. Specifically, the defendant claims that the trial court's actions during sentencing. Specifically, the defendant claims that the trial court erred in failing to allow her attorney to speak in her behalf prior to sentencing and in denying her an opportunity to be heard on the question of probation.

Rule 32(a)(1) of the *West Virginia Rules of Criminal Procedure* requires the court to allow the defendant and her counsel the opportunity to speak on the defendant's behalf before the imposition of sentence. The rule, which embodies the right referred to as the right of "allocution," states: "Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment ..."

The record clearly shows that the trial court did not permit the defendant to speak or her counsel to speak in her behalf before sentencing.

Additionally, during sentencing, defense counsel requested a stay of execution so that he might file a petition for probation and for a probation hearing. The court denied the stay of execution and summarily denied probation. The court stated:

> This court is of the opinion because of the nature of the crime and the evidence that came out at the trial regarding the type of trafficking that was going on in this woman's house or business or both, which were combined, that the crime was such that probation should not be considered for the woman.
>
> I hate to go through the useless gesture of conducting a probation hearing under these circumstances, and since the Supreme Court has not yet said that I have to give a person a probation hearing, I am going to deny your motion.

In syllabus point 2 of *State v. Godfrey*, 170 W.Va. 25, 289 S.E.2d 660 (1981), this Court said:

> A trial judge should, ordinarily, hear testimony regarding whether a defendant should be placed on probation if that defendant is statutorily eligible for such probation. The extent of such testimo-

ny, however, is within the second discretion of the trial judge.

In *State v. Dobbs*, 169 W.Va. 284, 286 S.E.2d 918 (1982), the Court found that the failure of a trial court to give a defendant, who had no previous felony record, an opportunity to present a case for probation constituted reversible error requiring reversal and a remand for resentencing. We believe that such is the situation here.

The failure of the trial court to follow the proper procedures for sentencing does not affect the validity of the defendant's conviction.[1] In similar situations, the Court has not reversed the conviction, but has remanded for resentencing. *See, State v. Lawson*, 165 W.Va. 119, 267 S.E.2d 438 (1980); *State v. Bail*, 140 W.Va. 680, 88 S.E.2d 634 (1955); *State v. Self*, 130 W.Va. 515, 44 S.E.2d 582 (1947). The Court believes that is what should be done in this case. Upon remand the trial court should afford the defendant the right of allocution and the right to present her case for probation.

Remanded with directions.

---

**1.** In addition to the trial and sentencing errors discussed, the defendant claims that informant Scott Myers' entry on her premises was unconscionable and suggests that his entry was the result of a police attempt to entrap her. The entrapment defense was presented to the jury, but the jury rejected it.

Also, the defendant claims that her attorney failed to render effective assistance. We have examined the attorney's conduct and are of the opinion that he was effective. We believe that the actions of defense counsel which the defendant questions involved matters of strategy and did not constitute reversible error. *See, State v. Bogard*, 173 W.Va. 118, 312 S.E.2d 782 (1984); *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).